**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **CLIFFORD ANTONIO ROWLING,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 3:21-CV-01047-NJR** |
| **ROB JEFFREYS, JESSICA STOVER, SARAH BROWN-FOILES, ROBERT MOONEY, and HEATHER WRIGHT,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, Chief Judge:**

In August 2021, Plaintiff Clifford Rowling, a civil detainee of the Illinois Department of Corrections, initiated this lawsuit through counsel under 42 U.S.C. § 1983. Rowling alleges violations of the Fourteenth Amendment, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and a breach of fiduciary duty. (Doc. 1). Specifically, Rowling asserts that Defendants Rob Jeffreys, Jessica Stover, Sarah Brown-Foiles, Robert Mooney, and Heather Wright[1] (collectively "Defendants") failed to provide adequate care and treatment as required by the Sexually Dangerous Persons Act, 725 ILCS 205, *et seq.*, and failed to accommodate Rowling's mental condition and learning disabilities while detaining him at Big Muddy River Correctional Center ("Big Muddy"). (*Id.*).

After a sexual offense in 2008, Rowling was civilly detained and placed into the

---

[1] According to the briefing, Heather Wright's name has changed to Heather DeLashmutt. (*See* Doc. 85-1). Throughout this Order, the Court will continue to use Wright, as that is the name on the docket sheet.

Sexually Dangerous Persons Treatment Program ("SDP Program") at Big Muddy in 2009.[2] (*Id.*). Rowling alleges that he has been denied effective treatment, and thus, has no meaningful prospect for eventual release. (*Id.*). Rowling's complaint contains three counts under 42 U.S.C. § 1983 and the Fourteenth Amendment for failure to adequately treat Rowling's mental illnesses and disorders (Count I), failure to adequately provide treatment as a civilly committed sexually dangerous person (Count II), and failure to adequately train or supervise employees regarding proper care and treatment (Count III). (*Id.*). The complaint also includes one count under the ADA for failure to accommodate Rowling's learning and intellectual disabilities (Count IV) and one count for breach of fiduciary duty for failure to provide care and treatment designed to reach recovery (Count V). (*Id.*). In light of these claims, Rowling seeks compensatory damages for lost wages, reduced earning capacity, pain and suffering, and loss of liberty, along with declaratory, injunctive, and specific relief. (*Id.*).

Discovery is ongoing, and now pending before the Court is Rowling's Motion to Compel Responses to Interrogatories and Requests for Production of Documents against Defendants Rob Jeffreys, Sarah Brown-Foiles, and Heather Wright.[3] (Doc. 85). Rowling seeks a complete response to three interrogatories and two requests for production. (*Id.*). Defendants filed a response in opposition along with a Motion for Protective Order. (Docs. 87, 88).

---

[2] "Persons charged with sex offenses in Illinois may be diverted before trial to civil confinement, if a mental illness of at least one year's duration led to the criminal conduct. Those who complete treatment successfully are released and the criminal charges dismissed." *Allison v. Snyder*, 332 F.3d 1076, 1078 (7th Cir. 2003); 725 ILCS 205/1.01-205/12.

[3] *See supra* note 1.

LEGAL STANDARD

"District courts have broad discretion in discovery matters[.]" *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001). Under Federal Rule of Civil Procedure 26, discovery is permitted "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002). Strong public policy considerations favor the disclosure of relevant materials such that "[b]efore restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002); *See* FED. R. CIV. P. 26(b).

The Federal Rules empower litigants to move for an order compelling disclosure or discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. FED. R. CIV. P. 37. The party moving to compel an answer or production bears the initial burden of establishing that the requested discovery is relevant. *Applegate v. St. Vincent Health, Inc.*, No. 1:22-cv-01097, 2023 WL 11157477, at *2 (S.D. Ind. Feb. 9, 2023). Then, the burden shifts to the objecting party to show why a particular discovery request is improper. *Medical Assur. Co., Inc. v. Weinberger*, 295 F.R.D. 176, 181 (N.D. Ind. 2013).

### DISCUSSION

Rowling seeks an order compelling full and complete responses to Interrogatory Numbers 16, 17, and 19 of his second set of interrogatories. (Doc. 85). In her previous responses, Defendant Wright stated that 52 SDP Program participants have been released since 2003, and at least four of those released participants had a diagnosed learning disability per evaluations by Wexford Health Sources, Inc. (Doc. 85-3, p. 5). Interrogatory 16 requests the total number of participants diagnosed with learning disabilities within the SDP Program who received treatment since 2003. (Doc. 85-1). Interrogatory 17 seeks a statement or description of the diagnosed learning disabilities of those four participants and the identity of each mental health professional involved in the treatment or decision of release for those participants. (*Id.*). Finally, Interrogatory 19 pursues a detailed description of any services provided by the Illinois Department of Corrections ("IDOC") relating to the Illinois Department of Human Services ("IDHS") Treatment and Detention Facility in Rushville, Illinois, along with information about whether and why any SDP Program participants were housed or received treatment there. (*Id.*).

Along with complete responses to his interrogatories, Rowling also seeks documentation in response to his Requests for Production Numbers 16 and 17 of his second set of such requests. (Doc. 85). Request 16 demands documents and communications discussing, confirming, or relating to the disabilities of the four released SDP Program participants diagnosed with learning disabilities. (Doc. 85-2). Request 17 asks for documents and communications discussing, confirming, or relating

to any mental health diagnosis or treatment for any *one* of the 52 released SDP Program participants who had *not* been diagnosed with a learning disability. (*Id.*).

For the interrogatories, Defendants objected to all three as overbroad in time and scope, irrelevant, unduly burdensome, and disproportional to the needs of the case. (Doc. 85-4). Specific to Interrogatory 16, Defendants object to the 20-year period for the information sought, including a portion of time that Rowling was not yet in the SDP Program. (*Id.*). As to Interrogatory 17, Defendants object because of the volume of information requested related to four different participants in the SDP Program, and the request contains no limit as to timeframe. (*Id.*). Defendants also take issue with the request because private health information of other individuals in the SDP program would necessarily be shared, and Defendants claim this information is protected by law. (*Id.*). Lastly, for Interrogatory 19, Defendants also object because of the volume of information requested related to a separate facility—at which Rowling or other SDP Program participants are not housed—run by a distinct and non-party department, IDHS. (*Id.*).

Similarly, for the requests for production, Defendants object to both Requests 16 and 17 as overbroad in time and scope (as there is no timeframe limitation), irrelevant, and not proportional to the needs of the case. (Doc. 85-5). Further, Defendants object as the production of documents responsive to the requests would necessarily include private health information of other individuals in the SDP Program. (*Id.*). Again, according to Defendants, that information is protected by law.[4] (*Id.*). In general, Defendants also criticize

---

[4] Defendants simultaneously filed a Motion for Protective Order for the same reason. (Doc. 88).

Rowling's motion as untimely, because he waited five months after the parties were at a stalemate to file the motion.

First, the Court will address the issue of timeliness. Defendants argue that Rowling improperly waited five months after their latest objections to the discovery requests to file his motion to compel, and, during that time, nothing else was done on the case. The Court notes that Rowling filed a motion to extend the discovery deadline shortly before filing his Motion to Compel. (Doc. 83). Defendants did not object to the requested extension. (*Id.*). Rowling filed his Motion to Compel with over three months left in the discovery window. Courts routinely deny motions to compel as untimely when they are filed after the close of discovery. *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331, 332 (N.D. Ill. 2005) ("[A] line of sorts has been sketched by a series of decisions: motions to compel filed after the close of discovery are almost always deemed untimely."); *see also Packman,* 267 F.3d at 647.

Defendants concede that there are no hard and fast rules governing the timeliness of a motion to compel filed *before* the close of discovery. But "[g]reater uncertainty occurs where the motion is made very close to the discovery cut-off date." *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. at 333. Here, the motion was not filed days or even weeks before the close of discovery. *See, e.g., Ridge Chrysler Jeep L.L.C. v. Daimler Chrysler Services North America, L.L.C.,* No. 03 C 760, 2004 WL 3021842, *4-6 (N.D. Ill. Dec. 30, 2004) (motion to compel filed over one year after defendant defended its objections and four days before close of discovery). While Rowling sought an extension of the discovery date and then filed the pending motion to compel, the Court hesitates to say that three months before

the discovery cut-off date is "very close." As Defendants did not object to the extension of the discovery deadline, they cannot now genuinely claim that a motion to compel raised in that time, months before the close of discovery, is too late.

The next broad objection that Defendants raise is that most of the discovery requests necessitate the production of private health information of non-parties to this litigation. According to Defendants, that information is confidential and protected by law. To support this proposition, Defendants cite only to the expressed concerns of IDOC representatives rather than to any viable law. Contrary to these hollow assertions, the Health Insurance Portability and Accountability Act ("HIPAA") allows "protected health information to be revealed in response to a discovery request, if the parties agree to a protective order and have presented it to the Court, or have asked the Court for a protective order." *United States ex rel. Camillo v. Ancilla Systems, Inc.*, 233 F.R.D. 520, 522 (S.D. Ill. 2005) (citing 45 C.F.R. § 164.512(e)(1)). Under the regulations, the protective order must prohibit the parties from using or disclosing the protected health information for any purpose other than the litigation and require the return to the covered entity or the destruction of the protected health information (including all copies made) at the end of the litigation.[5] *See* 45 C.F.R. § 164.512(e)(1)(v). Of course, discovery of medical records, especially those of a non-party, raises significant privacy concerns, and such records are protected by HIPAA. But HIPAA does not create a privilege against production or

---

[5] Here, beyond what HIPAA imagines, Rowling's counsel has agreed to even more protections and restrictions than are required. Rowling's counsel has proposed redaction of any personally identifiable information along with a designation of the records as "for attorney's eyes only" to mitigate the privacy and security concerns of divulging health information of peers to a civil detainee in custody.

admission of protected health information, it simply provides mechanisms for obtaining protected medical records in litigation. *See Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 925-26 (7th Cir. 2004); *see also Dyjak v. Piephoff*, No. 18-cv-02003, 2020 WL 2735706, at *2-3 (S.D. Ill. May 26, 2020). Upon entry of a HIPAA-compliant protective order, private health information that the Court deems relevant can be lawfully produced.[6]

Now the Court turns to the crux of the issue: whether Rowling's discovery requests pursue relevant information that is proportional to the needs of the case. First, Rowling argues that Defendants' objections should be overruled because to substantiate his claims he must prove Defendants held an official policy or custom that was the "moving force" behind his constitutional injury. And as such, he must show more than the deficiencies to his own experience. For this showing, Rowling declares that he is entitled to broad discovery into the treatment of other inmates. Defendants ignore this argument in their response to Rowling's Motion to Compel, but in their contemporaneously filed Motion for Protective Order, Defendants state that, "[a]lthough Plaintiff attempts to argue…that such information and documentation is needed to prove a policy or practice, Plaintiff has only brought claims related to the treatment he has been provided, making private health information of other individuals irrelevant to this case." (Doc. 88, ¶ 5).

While the complaint appears to raise claims under 42 U.S.C. § 1983 against IDOC

---

[6] As the SDP Program includes mental health treatment, the parties should consider the implications, if any, of the federal psychotherapist-patient privilege as it relates to the documents within the requested production. *See Jaffee v. Redmond*, 518 U.S. 1, 15 (1996) (confidential communications *made to* licensed psychiatrists, psychologists, or social workers are protected from compelled disclosure).

officials in their personal capacities, Rowling also seeks injunctive relief given the policies and practices employed by Defendants—which can be reasonably construed as an official capacity claim. *See Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) ("In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. The course of proceedings in such cases typically will indicate the nature of the liability sought to be imposed." (internal quotation marks omitted)). A suit against a state official in his or her official capacity is not a suit against the official but rather against the State itself. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989). State officials acting in their official capacity, nor the State itself, qualify as "persons" under § 1983 to be liable for compensatory damages and such suits are barred by the Eleventh Amendment. *Id.*; *Bethesda Lutheran Homes and Services, Inc. v. Leean*, 122 F.3d 443, 444 (7th Cir. 1997). But Section 1983 permits official-capacity suits against state officials that seek only injunctive relief. *Power v. Summers*, 226 F.3d 815, 819 (7th Cir. 2000); *See Graham*, 473 U.S. at 167 n. 14 ("[I]mplementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State.").

Here, IDOC Director Rob Jeffreys is a party to the suit, and to the extent Rowling brings official capacity claims for injunctive relief against him, Rowling can prove those claims by showing a policy or custom is the cause of the ongoing constitutional violation. In an official capacity suit, a policy or custom must have played a part in the violation of federal law and an entity is only liable when it is a "moving force" behind the deprivation. *Graham*, 473 U.S. at 166. And as such, the Court agrees that Rowling is entitled to broad discovery to show more than the deficiencies to his own experience. *See Hildreth v. Butler*,

960 F.3d 420, 432 (7th Cir. 2020) (Hamilton, J. dissenting) (acknowledging that for a plaintiff to offer evidence of a sufficiently widespread problem within the prison medical system, his demands for broad discovery into other inmates' experiences within that system should be undeniable); *see Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014) (single incidents do not suffice to establish widespread custom or practice); *see also Green v. Meeks*, 20-cv-00463, 2023 WL 1447817, at *8 (S.D. Ill. Feb. 1, 2023).

Aside from the official capacity injunctive relief claims, the information requested by Rowling also has relevance for his other claims. For example, his individual capacity claims under the Fourteenth Amendment necessitate a showing that Defendants acted purposefully, knowingly, or recklessly when considering the consequences of their handling of Rowling's case and that the challenged conduct was objectively unreasonable. *See McCann v. Ogle Cnty., Ill.*, 909 F.3d 881, 886 (7th Cir. 2018). Information regarding the successful treatment of other learning-disabled SDP Program participants, including the resources provided to those participants, could shed light on Defendants' knowledge of potential effective treatments and the reasonableness of their possible disregard of those options in treating Rowling.

In addition, Rowling raises claims of supervisor liability under Section 1983. To be liable for the conduct of subordinates, a supervisor must personally know about the conduct and facilitate it, approve it, condone it, or turn a blind eye to it. *See Lanigan v. Vill. of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997). The requested information may bear on whether Defendants knew of an efficacious treatment for learning-disabled program participants and allowed Rowling to languish in the program with a deficient

treatment plan. Moreover, Rowling has claims for failure to accommodate his learning disability. The discovery requested could reasonably lead to admissible evidence on the issue of available accommodations for Rowling and whether he was denied access to participation in advanced phases of the SDP Program because of his learning disability. These represent just a few examples of the relevance of Rowling's requests to his claims.

Defendants also object to the interrogatories and requests for production due to proportionality, scope, and undue burden. Specifically, Defendants state that a response to Interrogatory 16 would require the review of each SDP Program participant's file to determine if they had ever been diagnosed with a learning disability, which, especially considering the more than 20-year period and 220 total participants, would require too many resources to be proportionate to the case. As to Interrogatory 17 and Requests for Production 16 and 17, Defendants contest the lack of timeframe and volume of information requested. Rowling challenges Defendants' arguments regarding undue burden and disproportionate production as Defendants have already produced information regarding the total number of SDP Program participants since 2003, the number of participants who have been released over that period, and the number of the released participants diagnosed with learning disabilities.[7] As to the objections for scope, Rowling insists that he has intentionally limited his requests for production to only five of the 52 released participants.

---

[7] Defendants highlight that the original answer provided indicating that four participants with learning disabilities have been released from the program actually indicated that *at least* four were released. (Doc. 87, p. 5). They also claim that response was based on the personal knowledge of Defendant Wright, not an actual review of the released individual's files. (*Id.*).

The objecting party carries the burden to show why a particular discovery request is improper. *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009). This burden cannot be met by a "reflexive invocation of the same baseless, often abused" language that the requested discovery is overly broad or unduly burdensome. *Avenatti v. Gree USA, Inc.*, No. 2:20-cv-00354, 2021 WL 1034392, at *2 (S.D. Ind. Mar. 17, 2021). Defendants offer very little rationale to substantiate their objections with no specificity regarding the burden they would face due to these requests.

As to Interrogatories 16 and 17 and Requests for Production 16 and 17, the Court finds that Rowling's requests do not create an undue burden on Defendants or entail a production that is disproportionate to the needs of this case. As discussed above, given the nature of the claims, the information requested is relevant. Furthermore, Rowling has been subjected to 15 years of civil detention with little progress and no foreseeable opportunity for release. That detention is allegedly based, not on his conduct or lack of rehabilitation, but rather on his learning disability. The constitutional violations alleged, both past and ongoing, are most serious and the interest in furthering the truth-seeking function in this case is high. *See Patterson,* 281 F.3d at 681. As such, compelling Defendants to review 220 files for evidence of learning disabilities of SDP Program participants is not disproportionate to the needs of the case. Notably, the review would likely not require examination of each file in its entirety, but rather certain sections like intake and medical history. At this stage, Rowling's Requests for Production seek a total of five files, which is not disproportionate or unduly burdensome.

In his requests, Rowling seeks information dating back to the inception of the

program in 2003. Defendants take issue with this timeline as overbroad, especially considering he entered the program in 2009. Rowling seeks information for a period of only six years when he was not a participant in the SDP Program. The information dating back to 2003 is relevant to understand the available treatment and accommodation for learning disabilities throughout the program, especially before and near his arrival. The Court sees no reason to restrict the timeframe to after Rowling joined the program, nor do Defendants offer compelling argument against disclosure of information generated before 2009.

Accordingly, Defendants are compelled to provide complete responses to Interrogatories 16 and 17 and to produce the documents sought in Requests for Production 16 and 17. No information should be provided or disclosed before the entry of a qualified protective order (see below for further instruction).

Finally, in Interrogatory 19, Rowling asks Defendants to describe in detail any services (including but not limited to housing, security, treatment or other services) provided by IDOC at or in connection with the IDHS treatment and Detention Facility in Rushville and to state whether any SDP Program participants are housed or receive treatment there and why. Defendants argue that Rowling confuses the relationship between the SDP Program at Big Muddy within IDOC and the Sexually Violent Persons Program ("SVP Program") at Rushville Treatment and Detention Center within IDHS—SDP Program participants have been civilly committed in lieu of a criminal conviction, whereas the SVP Program members have already served time for a criminal conviction but remain sexually violent. Defendants argue that Rowling cannot be transferred into

the SVP Program, and thus, any related discovery is irrelevant and not proportional to the needs of the case. Moreover, Defendants claim that documents related to treatment at that facility are outside their possession, custody, and control. In opposition, Rowling urges that the information requested about the Rushville facility is relevant and discoverable to establish that Defendants were aware of more appropriate treatment options for learning disabled participants and had the ability to offer more appropriate treatment to him.

The Court agrees with Defendants as to the relevance of some of the requested information in Interrogatory 19. Particularly, services like housing and security that IDOC provides to the facility in Rushville are irrelevant to Rowling's claims. Defendants do not need to respond to this part of the interrogatory. If IDOC provides any treatment services at Rushville, this could be relevant, and Defendants shall provide a response describing in detail only treatment services that IDOC provides at Rushville—if any. Given Defendants' response and argument regarding this interrogatory, the Court is surprised they cannot provide a straightforward answer. Defendants seem to convey that no SDP Program participants are housed at or receive treatment from the Rushville facility, because the type of detention is different, and the programs are separate. As such, Defendants shall provide an answer to Interrogatory 19, aside from the irrelevant portion related to housing and security services.

<h2 align="center">CONCLUSION</h2>

For the reasons set forth above, the Court **GRANTS in part** Plaintiff Rowling's Motion to Compel (Doc. 85). The Court also **DENIES** Defendants' Motion for Protective

Order (Doc. 88). The Court **ORDERS** the parties to confer and jointly submit an agreed qualified protective order related to the protected health information subject to disclosure on or before **September 26, 2024**. After entry of a protective order, Defendants **SHALL** produce the compelled responses and documents to Rowling's counsel **within 45 days**.

The Court **COMPELS** Defendants to produce the information requested in Rowling's Second Set of Interrogatories 16 and 17, and a complete response to Interrogatory 19 subject to the limitations discussed in this Order. Further, the Court also **COMPELS** Defendants to produce the information and documentation requested in Rowling's Second Set of Requests for Production 16 and 17.

In light of this Order, the parties are encouraged to discuss the operative scheduling order and move for an extension of the deadlines, if necessary.

**IT IS SO ORDERED.**

**DATED:  September 12, 2024**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**